In the Matter of Kenneth Lee WYLIE.

No. 4022.

District of Columbia Court of Appeals.

Argued Oct. 31, 1966.

Decided June 30, 1967.

Edmund E. Fleming, Washington, D. C., for appellant.

Robert C. Findlay, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, Hubert B. Pair, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge:

A petition was filed in the Juvenile Court charging that appellant, seventeen years of age, "in company with two unknown males, at about 4:15 A.M., on June 6, 1965, at 14th and R Streets, N. W., in the District of Columbia approached Henry James Jackson, age 13, and struck him in the left eye then grabbed him and asked him for his

money." Trial by jury resulted in a verdict that appellant was "involved" and he was committed to the National Training School.

This appeal raises numerous claims of error. Shortly after oral argument here, the Supreme Court of the United States heard argument in Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and since at least one of the issues there was identical with one here, we deferred our ruling until Gault was decided.

In Gault it was held that in a proceeding against a juvenile, written notice should be given "of the specific charge or factual allegations to be considered at the hearing" (id. at 33, 87 S.Ct. at 1446), and that there must be timely notice "of the specific issues" to be met. (Id. at 34, 87 S.Ct. 1428.) Appellant claims that the petition here was too vague and indefinite to allow him to understand it and to intelligently defend against it. Guided by the ruling in Gault, we agree with appellant.

The allegations of the petition could be construed as charging that appellant violated our law of robbery, or of attempted robbery, or of assault, or that he was charged with violating all three laws.[1] It is clear that the evidence did not support the allegations in all respects.

The testimony of the complaining witness was that while delivering papers in the early hours of Sunday morning, he was stopped by "three or four" older boys, one of whom asked for a dime. Another then asked for all his money. Complainant ran to an alley, looked back and saw appellant following him; then complainant ran to a telephone building where a security guard was stationed. Appellant caught up with complainant at the building and began "pulling on" him. A police cruiser happened upon the scene and one officer saw appellant "having the complainant up against the wall wrestling." Appellant ran away but was captured by the officer.

Appellant testified that he intervened with the other boys to prevent them from taking complainant's money, and pursued complainant because he saw the boy was upset and wished to calm him down. Appellant testified that when he saw the police, he "panicked and ran."

It will be observed there was no testimony whatever to support the allegation that appellant, or anyone else, struck complainant in the eye. Likewise there was no testimony that appellant asked or demanded money from complainant.

Viewing the allegations of the petition and the testimony, it is difficult, if not impossible, to determine with accuracy the specific charge or charges against appellant. No one at trial appeared willing to state the charge with specificity. In closing argument to the jury the corporation counsel stated the issue to be whether appellant was "involved in this law violation." Defense counsel stated that the charge was "in the nature of a law violation of attempted robbery."

The court, however, indicated a different view of the petition. In its charge to the jury the court stated that the petition alleged that appellant approached the complainant, "grabbed him and asked him for some money." Later in its charge, the court told the jury it was their duty to determine whether appellant "did commit the law violation set forth in the petition." Further in its charge, the court told the jury the burden was on the government to prove that appellant "participated in or committed the alleged act of delinquency."

Evidently the court was of the impression that the specific charge against appellant was assault because toward the conclusion of the charge to the jury the court gave an instruction on assault and stated the burden was on the government to prove that appellant "committed the alleged offense." Upon

1. The Juvenile Court has jurisdiction of a juvenile who has violated a law, a municipal ordinance or regulation. D.C.Code 1961, § 11–1551(a) (1) (A) (Supp. V. 1966).

completion of the charge the court inquired whether there were any additional instructions. After conference with counsel, and apparently at the instance of appellant's counsel, the jury was instructed on robbery and attempted robbery.

The result apparently was that three issues were submitted to the jury, namely, assault, robbery and attempted robbery, but at no time was the jury instructed that it should consider the three issues separately and return verdicts as to each issue. If, as was held in *Gault*, appellant was entitled to notice of the specific issues, it must follow that the jury should have been expressly instructed with respect to the specific issues.

To add to the confusion, the jury was instructed that in the Juvenile Court a child could not be charged with or convicted of any crime, and for that reason its verdict should be either "involved as alleged or not involved, rather than the customary verdict of guilty or not guilty." No other explanation of the term "involved" was given. The jury returned a single verdict: "Involved."

What did the jury understand the term "involved" to mean? What did their verdict mean? Involved in an assault, a robbery, an attempted robbery, "the alleged offense," or "an act of delinquency?"

It appears to us that appellant was tried on issues not specifically stated and separated, and the jury, not specifically instructed on the separate issues, returned a general verdict of involved. Such a verdict cannot stand and the order of commitment must be reversed.

We realize that much of the confusion in this case arises from the practice in the Juvenile Court of studiously avoiding the use of any term even suggesting that the proceeding against a juvenile is criminal in nature. Undoubtedly this practice has arisen because of decisions by the highest court in this jurisdiction holding that in the Juvenile Court a juvenile is not accused of a crime, is not tried for a crime, is not convicted of a crime, and in effect a juvenile is exempt from the criminal law.[2] While *Gault* does not altogether abolish this concept of noncriminality in Juvenile Court proceedings, it does, we believe, require that in a proceeding against a juvenile for violation of a law, ordinance or regulation, the constitutional concept of due process must be observed.

In our view a verdict of "involved" is too vague and indefinite to satisfy the requirement of due process. Involved is a word of varied meanings and one not easily defined as a standard for jury determination.[3] If the Juvenile Court deems it inadvisable to use the verdict of guilty or not guilty in this type of case,[4] resort could be had to special interrogatories, calling simply for the answer of "yes" or "no" to the question whether the juvenile violated the law or regulation in question.

Our ruling with respect to the necessity for notice of the specific issues, specific instructions on such issues, and disapproval of the use of the verdict of involved shall apply only in this case and in trials occurring after this date.[5]

Appellant also argues that it was error for the court to charge that the burden on the government to prove the allega-

2. See, for example, Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556 (1959).

3. One authority says the word involve "is overworked as a general purpose verb that saves the trouble of precise thought." Fowler, Modern English Usage (2d ed. 1965).

4. It may be noted that Congress did not hesitate to use the word "convicted" in reference to certain proceedings in the Juvenile Court. See D.C.Code 1961, § 3–120.

5. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

tions was by a preponderance of the evidence. Appellant says the burden should have been that of beyond a reasonable doubt. The decision in *Gault* alluded to but did not pass upon the question of the degree of burden of proof in Juvenile Court cases. (Id. at 11, Note 7.) We adhere to our ruling in In re Bigesby, D.C.App., 202 A.2d 785, 786 (1964), that "the strictly criminal law concept of guilt beyond a reasonable doubt" is unnecessary and improper in a Juvenile Court proceeding.

It is not necessary to consider other claims of error.

Reversed.